## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BELLIS,<br><br>    Plaintiff,<br><br>    v.<br><br>A.R., a minor, by and through his parent and natural guardian, Dulaney Kelly,<br><br>    Defendant,<br><br>    v.<br><br>DULANEY KELLY,<br><br>    Defendant,<br><br>    v.<br><br>JOHN DOE(s) #1,<br><br>    An unknown individual(s),<br><br>    v.<br><br>3.506 BITCOINS, 65.027 SOLANA COINS,<br><br>    *In rem* Defendants,<br><br>    v.<br><br>Payword, Inc. (d/b/a Kraken), XT.com, HTX.com, Cobo.com, Coinbase, Inc., and John Does #2,<br><br>    Relief Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF PURSUANT TO:**<br><br>1. **The Computer Fraud and Abuse Act, 18 U.S.C. §1030 et seq.;**<br>2. **The New Jersey Computer-Related Offenses Act, NJSA 2A:38A et seq.;**<br>3. **Common Law Fraud;**<br>4. **Common Law Conversion of Property;**<br>5. **Replevin under NJSA 2B:50-1**<br>6. **Common Law Unjust Enrichment; and**<br>7. **Misappropriation of Confidential Information**<br>8. **Civil Conspiracy**<br>9. **Negligence**<br>10. **Equitable Relief, Including**<br>    **(a) Freeze and Disgorgement of Stolen Assets;**<br>    **(b) Accounting**<br>    **(c) Establishment of Constructive Trust**<br>    **(d) Freeze of Assets** |

Plaintiff John Bellis brings this case, by and through his attorneys, upon personal knowledge and information, as follows:

## INTRODUCTION

1.     Plaintiff John Bellis ("Plaintiff") is a cryptocurrency theft victim who had 3.506 Bitcoins and 65.027 Solana Coins, worth approximately $430,000 at the time, stolen from him on July 28, 2025.

2.     The thief is currently washing and laundering Plaintiff's stolen cryptocurrency through various cryptocurrency exchanges to cover his tracks, to obfuscate origin and true ownership, and to stymie asset recovery efforts and criminal investigations.

3.     Plaintiff's stolen crypto assets are volatile, easily transferrable across borders, and subject to immediate concealment or liquidation.

4.     Once those assets are moved beyond traceability, Plaintiff will suffer a permanent loss that cannot be undone and no damages award could make Plaintiff whole.

5.     Time is of the essence as Plaintiff is suffering ongoing and immediate irreparable harm.

6.     On July 28, 2025, Plaintiff's stepson, A.R.,[1] with the aid and assistance of his biological father, Dulaney Kelly, and possibly other unknown John Does, stole over 3.5 Bitcoin and 65 Solana Coins from Plaintiff's cryptocurrency wallets.

7.     A.R. used fraudulent and illegal tactics to access Plaintiff's computer, iPhone, and cryptocurrency wallets.

8.     Once A.R. had access to Plaintiff's cryptocurrency wallets, A.R. drained Plaintiff's cryptocurrency wallets of $430,000 worth of Bitcoin and Solana assets (the "Stolen Assets").

_____

[1] A.R. is currently 16 years old.  To protect his privacy, Plaintiff has used his initials in this Complaint and all related pleadings.

9.      Plaintiff is now tracking his assets across the Bitcoin and Solana blockchain and requests an order freezing his Stolen Assets, an order instructing A.R., Kelly, and certain Virtual Asset Service Providers ("VASPs") to provide information on the identity of the account holders and transactions involving the Stolen Assets, and other relief.

## PARTIES

10.     Plaintiff is an individual who resides at 462 Clothier Road, Wynnewood, PA 19096.

11.     Plaintiff's family owns a shore home located at 7663 Ocean Drive, Avalon, NJ 08202, the place where A.R. hacked Plaintiff's computer and iPhone and stole Plaintiff's Bitcoin and Solana Coin.

12.     Defendant A.R., the Plaintiff's stepson, is the hacker who illegally accessed Plaintiff's cryptocurrency wallets and stole Plaintiff's Bitcoin and Solana coin assets.  A.R. resides with his biological father at 30115 Jefferson Way, Westlake, OH 44145.  The action against A.R. is being brought by and through his legal guardian, Dulaney Kelly.

13.     Defendant Dulaney Kelly ("Kelly") is A.R.'s biological father and legal guardian who aided, assisted, and conspired with A.R. to steal Plaintiff's Bitcoin and Solana Coin assets and/or, in the alternative, was negligent, reckless, and complicit in allowing A.R. to wash or launder the Stolen Assets through other cryptocurrency exchanges.  Kelly resides at 30115 Jefferson Way, Westlake, OH 44145.

14.     Defendant John Doe(s) #1 is any person who also aided, assisted, and conspired with A.R. and Kelly to steal Plaintiff's Bitcoin and Solana Coin assets.

15.     In rem defendants "3.506 Bitcoin" and "65.027 Solana Coin" are the cryptocurrency assets that A.R. stole from Plaintiff.

16.    Relief Defendant Payword, Inc. (d/b/a Kraken) is a VASP that received deposits of the Stolen Assets.  Kraken is headquartered in Cheyenne, Wyoming.

17.    Relief Defendant XT.com is a VASP that received deposits of the Stolen Assets. XT.com is operated out of the Seychelles.

18.    Relief Defendant HTX.com (Huobi) is a VASP that received deposits of the Stolen Assets.  HTX.com is headquartered in Lithuania.

19.    Relief Defendant Cobo.com is a VASP that received deposits of the Stolen Assets.   Cobo.com is headquartered in Singapore.

20.    Relief Defendant Coinbase, Inc. is a VASP that received deposits of the Stolen Assets.   Coinbase, Inc. is legally registered in Delaware with no physical headquarters.

21.    The "John Doe(s) #2" Relief Defendant is one or more unknown cryptocurrency exchanges or private wallets that have received deposits of the Stolen Assets.

**JURISDICTION AND VENUE**

22.    This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1331 because this case involves a federal question under the Computer Fraud and Abuse Act (18 U.S.C. §1030 et seq.).

23.    This Court has personal jurisdiction because A.R., Kelly, and John Doe #1 committed an intentional tort in New Jersey and/or aided and conspired to commit an intentional tort in New Jersey and because Plaintiff suffered the harm from the tort in New Jersey.  Further, each of the Relief Defendants avail themselves to the state of New Jersey and the United States by offering cryptocurrency exchanges via online platforms in New Jersey, the very same digital exchanges that now hold Plaintiff's Stolen Assets.

24.    Venue is appropriate in this District because Plaintiff's family home is in this District and the causes of action arose in this District.  Plaintiff frequently accessed his

cryptocurrency wallets and conducted cryptocurrency transactions from his computer in Avalon, NJ.

## FACTUAL ALLEGATIONS

### Plaintiff's Ownership and Custody of the Bitcoin and Solana Coin Assets

25.     As of July 28, 2025, Plaintiff maintained cryptocurrency wallets with Gemini, a secure and regulated cryptocurrency exchange platform, containing digital assets including the Stolen Assets.

26.     Cryptocurrency wallets, like bank accounts, have identifying numbers called addresses but are otherwise anonymous.

27.     Plaintiff maintained a BTC cryptocurrency wallet and a SOL cryptocurrency wallet with Gemini ("Plaintiff's Crypto Wallets").

28.     Plaintiff's Crypto Wallets are located on the bitcoin and solana blockchains, publicly available cryptocurrency ledgers which record transactions conducted using the cryptocurrency Bitcoin and Solana Coins.  The cryptocurrency Bitcoin, as opposed to the bitcoin blockchain, is referred to hereinafter as "BTC" and the cryptocurrency Solana Coin, as opposed to the solana coin blockchain, is referred to hereinafter as "SOL".

### A.R.'s Troubled Past and History of Computer Crimes

29.     In or around 2021, A.R. relocated to Ohio to live with his biological father, Kelly, after experiencing persistent behavioral issues while residing in Wynnewood, Pennsylvania.

30.     Shortly after enrolling in Westlake Public middle school in Ohio, A.R. was involved in a physical altercation after using racial slurs.

31.     Around the same time in 2022-2023, A.R. was accused by a female classmate of extortion, resulting in a diversionary program for minors and community service.

32.    A.R.'s academic performance then declined, and he then enrolled at "Insight Academy," a private school.

33.    In less than a year, A.R. was expelled from Insight Academy due to an "ongoing criminal investigation."

34.    Following his expulsion, A.R. was in and out of online-only schooling and another private school, where he refused to attend on many days, and then returned to online-only education.

35.    During this period, family members, including Plaintiff and his wife, A.R.'s mother, became suspicious that A.R. was increasingly involved in cybercrime activity on the dark web and other criminal behavior, including the recent "swatting" incidents in Ohio.[2]

36.    Despite Plaintiff's and his wife's strong objections, Kelly continued to provide A.R. with iPhones and computer devices, enabling him to maintain access to the internet and further criminal activities.

37.    In or around January 2024, law enforcement executed a search warrant at A.R.'s residence at 30115 Jefferson Way, Westlake, OH 44145, seizing at least a laptop and a burner cellular phone.

38.    Upon information and belief, Officers did not locate A.R.'s hidden iPhone.

39.    After the search, A.R. admitted to family members that he was involved in cybercrime but expressed confidence that authorities could not prove much because of his concealment efforts.

---

[2] "Swatting" is the action or practice of making a prank call to emergency services in an attempt to bring about the dispatch of a large number of armed police officers to a particular address.

40.    A.R. described himself as a "middleman" between individuals ordering swatting and those executing it, and he claimed that his targets were "bad people," including alleged pedophiles.

41.    Of course, Plaintiff and his wife urged A.R. to accept responsibility, plead guilty, and turn his life around.

42.    Kelly, by contrast, focused on minimizing A.R.'s potential legal exposure and strategizing around what the authorities could or could not prove.

43.    In November 2024, A.R. was formally charged in Cuyahoga County, Ohio, with 15 counts of cybercrime, including seven felonies.

44.    Kelly continued to strategize on A.R.'s defense, while A.R. expressed surprise that investigators had charged him with "only" 15 crimes and boasted that they could have found more.

45.    On December 12, 2024, at A.R.'s arraignment, the Judge ordered A.R. to refrain from using the internet and social media except for school purposes.

46.    Kelly assured the Court that he would supervise A.R.'s compliance with the Court's Order.

47.    Despite this Order, A.R. continued to use both his iPhone and laptop freely while in Ohio.

48.    During A.R.'s visits with Plaintiff, A.R. appeared at times to be maturing and distancing himself from criminal conduct, but this appearance was misleading as A.R. was plotting to victimize Plaintiff.

**A.R. Accessed Plaintiff's Computer, iPhone, and Crypto Wallets**
**Without Authorization to Disable Key Security Features**

49.     On or around June 20, 2025, while visiting Plaintiff's family vacation home in Avalon, New Jersey, A.R. wrongly and without authorization accessed Plaintiff's desktop computer and located a document titled "JABIII – If I Die."

50.     The "JABIII – If I Die" file is a Microsoft Word document that has instructions and passwords that Plaintiff's wife would need if Plaintiff were to unexpectedly pass away.

51.     The "JABIII – If I Die" file contained Plaintiff's iPhone PIN and other highly sensitive information, such as social security numbers, savings account numbers, checking account numbers, investment account numbers, digital currency account information, and dozens of pages of access codes, usernames, and pins ("Confidential Information").

52.     Using this information, A.R. disabled the "Wallet Whitelisting" security setting in Plaintiff's Gemini crypto account.

53.     Disabling the "Wallet Whitelisting" security feature removed the mandatory seven-day hold on adding new wallets to the Gemini account.

54.     At the time, Plaintiff was not aware of A.R.'s covert misconduct but forensic experts have now confirmed that this was inside job performed locally on Plaintiff's electronic devices.

55.     Having laid the groundwork to steal Plaintiff's BTC and SOL by loosening the security settings on Plaintiff's Wallet, A.R. returned to Ohio on June 22, 2025 with pre-meditated plans to return to Avalon soon to complete his crime.

## **A.R. Steals Plaintiff's BTC and SOL**

56.     A.R. was not scheduled to return to Plaintiff's family home until mid-August 2025, but he pleaded with Kelly and Plaintiff's wife to return sooner.  So, a visit for A.R. at the family's Avalon home was arranged for the end of July 2025.

57.     On July 24, 2025, Kelly drove A.R. from Ohio to Philadelphia, where Plaintiff then drove him to Avalon.

58.     A.R.'s visit to Avalon shore house was scheduled to end on Sunday, July 27, but A.R. convinced Kelly, Plaintiff, and his mother, to extend his stay in Avalon one "extra night."

59.     Plaintiff offered to drive A.R. to 30th Street Train Station in Philadelphia on Tuesday, July 29, but Kelly made arrangements to pick up A.R. in Avalon at 6:00 a.m. on Monday morning, July 28, adding almost four hours round trip to Kelly's seven-hour drive from Ohio.

60.     In the early morning hours of Monday July 28, 2025, while staying overnight at Plaintiff's Avalon home for the "extra night":

a)     A.R. stole Plaintiff's iPhone while Plaintiff was sleeping;

b)     entered the iPhone access PIN he had secured from the "*JABIII – If I Die*" file;

c)     added his own cryptocurrency wallets to Plaintiff's Gemini cryptocurrency account (*which would not have been possible had A.R. not disabled the "Wallet Whitelisting" security feature during his previous visit to Avalon a few weeks earlier in June 2025*); and

d)     transferred the Stolen Assets from Plaintiff's Wallets to A.R.'s own cryptocurrency wallets.

61. A.R.'s cryptocurrency wallets, where he deposited the Stolen Assets, bear the following digital addresses:

    a)    BTC Wallet: bc1qdcnvzzwhmd0z53mzq98r682ngpyn753d8p2x99; and

    b)    SOL Wallet: 78q5RQ3qbKNj2ztRpChuMvq4JUr1Pxid1HYMBzEGLo2B (collectively "A.R.'s Wallets").

62. At 4:53 a.m. on July 28, 2025, about one hour before Kelly was to pick up A.R. directly in Avalon, N.J., at Kelly's insistence, A.R. created a fake "hacker note" which he left on Plaintiff's desktop computer in an attempt to make it look like an anonymous outsider was responsible for the theft, and hoping to deflect suspicion from himself.

63. Forensic analysis and Gemini have both confirmed that the theft was executed locally, using physical access to Plaintiff's devices, with no evidence of remote access or malware.

64. No other persons were present in Plaintiff's home at that time except Plaintiff's wife and two other children ages seven and three, and Plaintiff's outdoor security cameras detected no third-party activity the night at issue.

65. When Plaintiff confronted A.R. about the theft by telephone on morning on July 28 and later in the week, A.R. denied involvement.

66. Kelly took no action in response to Plaintiff's grave concerns about the Stolen Assets.

### Tracking the Stolen Assets After the Theft / Forensic Confirmations

67. One of the features of blockchain technology is transparency.

68. A record of the movement and transfers of various assets can be reviewed on the bitcoin blockchain.

69.     Each transaction has a unique identifier.

70.     Another feature of blockchain technology is its relative anonymity.

71.     Blockchain users are identified by their public wallet addresses, not their names.

72.     As is typical in cryptocurrency thefts, A.R. has moved the Stolen Assets many times to try to obscure the trail.

73.     Plaintiff retained Digitalmint, a forensic blockchain analysis company, to track the Stolen Assets.

74.     From A.R.'s Wallets, Plaintiff's BTC and SOL was split up and moved around to five addresses associated VASPs in 46 BTC transactions and 10 SOL transactions.

75.     Plaintiff has currently identified five VASPs that received deposits of Plaintiff's BTC and SOL, which are named as Relief Defendants.

76.     As of this date 3.26740115 BTC and 62.64724082 SOL have been deposited with the Relief Defendants:

    a.    Relief Defendant HTX (Huobi) received 1.59681868 BTC deposits at wallet:  1NwPtWEBEHekh3kvULjtZv55SJxced8Wbq;

    b.    Relief Defendant Kraken received 1.128000352 BTC deposits at wallet:  3KwpftXNEMPpkoVZ3YsuTen7btyhE57dV7;

    c.    Relief Defendant XT.com received 0.54258212  BTC deposits at wallet: bc1q7dxkrtw3cr3cp5fjzn67zamzusu6vt9q8h6z4g;

    d.    Relief Defendant Cobo.com received 47.46351777 SOL deposits at wallet: Apw6BY4f5yz2SUUtowJUQP7ZUgL32mBFTUegMcxqsz3E; and

    e.    Relief Defendant Coinbase received 15.18372305 SOL deposits at wallet: 5nxr8Na3Z8ygZv4dvjuZhJ9YB9FQkC4PyqBMj9AKbqqU.

77.     On August 4, 2025, Gemini issued a written report confirming that the security settings were changed on Plaintiff's account on June 20 and the theft was perpetrated locally on July 28 directly on Plaintiff's devices, meaning there was no third-party outside hack.

78.     Independent forensic examination of the physical electronic devices likewise confirmed that the fake "hacker note" was typed from Plaintiff's desktop at 4:53 a.m. on July 28, 2025.

79.     Plaintiff has also filed criminal complaints with the F.B.I. and the Avalon Police Department, who are performing their own criminal investigations.

### Kelly's Aiding, Abetting, Conspiring, and/or Negligence

80.     On August 7, 2025, Plaintiff confronted Kelly and A.R. again on a 22-minute recorded Zoom call, during which Plaintiff demanded the return of the stolen cryptocurrency by 9:00 a.m. the following day.

81.     Plaintiff urged Kelly to confiscate A.R.'s electronic devices and turn them over to authorities.

82.     Kelly took no such action and A.R. did not return the Stolen Assets.

83.     On August 8, 2025, Plaintiff contacted the Cuyahoga County Ohio Prosecutor's Office, advising that he wished to testify against A.R. in his pending cybercrime case and reporting A.R.'s continued internet use in violation of court orders.

84.     The Cuyahoga County Ohio Detective, who had previously executed the search warrant on A.R.'s home in Ohio, confirmed that investigators had recovered a "treasure trove" of evidence implicating A.R. in a wide range of cybercrimes, including swatting, hacking, and possession of illegal pornography.

85.     On August 12, 2025, Plaintiff held a 33-minute recorded telephone call with Kelly, again urging him to seize A.R.'s electronic devices and warning him that by failing to act he was aiding and abetting the theft.

86. Kelly admitted he had not confiscated the devices and claimed he did not understand how cryptocurrency worked, though he indicated he would consult with friends for advice.

87. Meanwhile, forensic blockchain analysis confirmed that A.R. continued to move the Stolen Assets in patterns consistent with "peel chaining" and "comingling," laundering tactics used by criminals designed to obfuscate origin and ownership.

88. On August 15, 2025, blockchain tracing confirmed that A.R. moved a portion of the Stolen Assets through the following cryptocurrency exchange: XT.com, HTX.com, and Kraken.

89. That same day, Plaintiff notified Kelly via text message that A.R. was actively moving the Stolen Assets, warning Kelly he would be held liable if he continued to allow A.R. unfettered access to his electronic devices.

90. Kelly did not respond.

91. On August 16, 2025, Kelly retained private investigator William Scull of Ulbrich-Scull Investigations, who contacted Plaintiff.

92. Mr. Scull represented that Kelly had secured A.R.'s devices and sought to mediate the dispute.

93. Despite Mr. Scull's representations, forensic blockchain reporting confirmed that A.R. continued to launder the Stolen assets with transfers of SOL on August 20, 2025.

## CAUSES OF ACTION

### COUNT ONE
### Violation of The Computer Fraud And Abuse Act ("CFAA")
### 18 U.S.C. §1030 et seq.
### (against Defendants A.R., Kelly, John Doe #1)

94. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

95.     The CFAA gives Plaintiff a private right of action against computer hackers.

96.     Plaintiff's computer and iPhone are equipped with email, internet browsing software, Crypto Wallets, and access to social media.

97.     Accordingly, Plaintiff's computer is a "protected" computer used in interstate commerce and communication.

98.     Defendant A.R. had no authorization to access Plaintiff's computer and iPhone.

99.     Defendant A.R. knowingly accessed Plaintiff's computer and iPhone and did so with the intent to defraud and steal from Plaintiff.

100.    Defendant A.R. used the unauthorized access to steal over 3.5 BTC and 65 SOL from Plaintiff, far exceeding the CFAA minimum threshold of $5,000.

101.    Defendant A.R used the unauthorized access to steal Plaintiff's Confidential Information.

102.    Defendants A.R., Kelly, and John Doe #1 entered into an agreement and understanding to unlawfully access Plaintiff's iPhone and cryptocurrency accounts, in violation of 18 U.S.C. §1030 et seq.

103.    In furtherance of the conspiracy, A.R., Kelly, and John Doe #1 coordinated the use of stolen passwords and unauthorized access tools, which resulted in the transfer of the Stolen Assets to wallets controlled by Defendants.

104.    As a direct and proximate result, Plaintiff suffered and continues to suffer damages and immediate irreparable harm.

105.    Plaintiff is entitled to compensatory damages, punitive damages, costs of suit, attorneys fees, costs of investigation, and litigation costs pursuant to 18 U.S.C. §1030(g).

106.    Plaintiff is further entitled to injunctive and equitable relief pursuant to the CFAA including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets by any party; (ii) an order requiring A.R., Kelly, and John Doe #1 to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R., Kelly, and John Doe #1.

### COUNT TWO
**Violation of New Jersey Computer-Related Offenses Act, N.J.S.A. §2A:38A
(against Defendants A.R., Kelly, and John Doe #1)**

107.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

108.    A.R. purposefully, knowingly and without authorization, took data from Plaintiff's computer and iPhone, i.e. the passcodes to the iPhone and digital wallets, and wrongly manipulated and used Plaintiff's Crypto Wallets in violation of N.J.S.A. §2A:38A-3(a).

109.    Defendant A.R used the unauthorized computer access to steal Plaintiff's Confidential Information.

110.    Defendants A.R., Kelly, and John Doe #1 entered into an agreement and understanding to unlawfully access Plaintiff's iPhone and Crypto Wallets, in violation S.A. §2A:38A et seq.

111.    In furtherance of the conspiracy, A.R., Kelly, and John Doe #1 coordinated the use of stolen passwords and unauthorized access tools, which resulted in the transfer of Plaintiff's Stolen Assets to wallets controlled by Defendants.

112.    As a direct and proximate result, Plaintiff suffered and continues to suffer damages in excess of the statutory minimum and immediate irreparable harm.

113.     Plaintiff is entitled to compensatory damages, punitive damages, costs of suit, attorneys fees, costs of investigation, and litigation costs pursuant to N.J.S.A. §2A:38A-3.

114.     Plaintiff is further entitled to injunctive and equitable relief pursuant to N.J.S.A. §2A:38A-5, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets by any party; (ii) an order requiring A.R., Kelly, and John Doe #1 to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R., Kelly, and John Doe #1.

## COUNT THREE
### Fraud
### (against Defendant A.R.)

115.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

116.     A.R. intentionally misrepresented to Plaintiff the reasons for his visit to Plaintiff's Avalon home in July 2025.

117.     These misrepresentations were false, because the true reason for A.R.'s visit was to commit a crime against Plaintiff.

118.     A.R. knew the representations were false and made them with the intent that Plaintiff would rely them to allow access to his Avalon home where A.R. could complete his crime.

119.     Plaintiff relied on A.R.'s misrepresentations concerning the return visit to Avalon.

120.     As a result, A.R. obtained unauthorized access to Plaintiff's property, including Plaintiff's Avalon home and the Stolen Assets.

121.     A.R. also intentionally misrepresented to Apple and Gemini that he was the Plaintiff, by using Plaintiff's login credentials, passwords, and authentication information.

-16-

122.    These misrepresentations were false, because A.R. is not Plaintiff and had no lawful authority to access Plaintiff's accounts or devices.

123.    A.R. knew the representations were false and made them with the intent that Apple and Gemini would rely on them to grant access.

124.    Apple and Gemini, relying on A.R.'s misrepresentations, granted access to Plaintiff's accounts and devices.

125.    As a direct and proximate result, Plaintiff suffered and continues to suffer damages and immediate irreparable harm.

126.    Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

127.    Plaintiff is further entitled to injunctive and equitable relief, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets by any party; (ii) an order requiring A.R. to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R.

## COUNT FOUR
### Conversion
### (against Defendant A.R.)

128.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

129.    As of July 28, 2025, Plaintiff owned and had the right to possess the Stolen Assets and his Confidential Information.

130.    When A.R. drained Plaintiff's Crypto Wallets of BTC and SOL, A.R. intentionally took possession of, and assumed control over, the Stolen Assets.

131.    A.R. have intentionally exercised control, and continues to exercise control, over the Stolen Assets in such a way as to preclude Plaintiff from using or possessing the Stolen Assets.

132.    A.R. knew the Stolen Assets were stolen or obtained in a manner constituting theft.

133.    Accordingly, A.R. wrongfully converted the Stolen Assets.

134.    As a direct and proximate result of the conversion, Plaintiff suffered damages and continues to suffer damages and immediate irreparable harm as long as the Stolen Assets are in the possession of A.R.

135.    Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

136.    Plaintiff is further entitled to injunctive and equitable relief, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets by any party; (ii) an order requiring A.R. to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R.

## COUNT FIVE
### Replevin under N.J.S.A 2B:50-1
### (against Defendant A.R.)

137.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

138.    On July 28, 2025, A.R. acquired possession of the Stolen Assets from Plaintiff through fraud, and A.R. wrongly holds the Stolen Assets.

139.    A.R. has intentionally exercised control, and continues to exercise control, over the Stolen Assets in such a way as to preclude Plaintiff from using or possessing the Stolen Assets.

140.    A.R. have no right to possess the Stolen Assets.

141.    A.R. did not take the Stolen Assets to satisfy any tax, assessment, lien, or attachment against Plaintiff.

142.    As a direct and proximate result, Plaintiff suffered and continues to suffer damages and immediate irreparable harm.

143.    Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

144.    Plaintiff is entitled to the return of the Stolen Assets and other relief that the court may deem just and proper. Plaintiff is further entitled to injunctive and equitable relief, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets by any party; (ii) an order requiring A.R. to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R.

## COUNT SIX
### Unjust Enrichment
### (against Defendant A.R.)

145.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

146.    A.R. obtained a benefit when he stole Plaintiff's BTC and SOL.

147.    Under the circumstances, it would be against equity and good conscience to permit A.R. to retain the Stolen Assets.

148.    As a direct and proximate result, Plaintiff suffered and continues to suffer damages and immediate irreparable harm.

149.    Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

150.    Plaintiff is entitled to the return of the Stolen Assets and other relief that the court may deem just and proper.

151.    Plaintiff is further entitled to injunctive and equitable relief, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets by any party; (ii) an order requiring A.R. to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R.

<b><u>COUNT SEVEN</u></b><br><b>Misappropriation of Personal Confidential Information</b><br><b>(against Defendant A.R.)</b>

152.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

153.    Individuals have a legally protected interest in the confidentiality and privacy of their personal financial and identifying information, including but not limited to:

   a.  Bank account numbers and PIN codes;
   b.  Online banking login credentials;
   c.  Cryptocurrency wallet private keys;
   d.  Debit and credit card account information;
   e.  Other non-public personal identifiers.

154.    Plaintiff took reasonable steps to preserve the confidentiality of such information, which was stored securely and intended solely for Plaintiff's personal use in managing his financial affairs.

155.    A.R. without authorization or consent, intentionally and wrongfully obtained, accessed, and misused Plaintiff's Confidential Information.

156.    A.R.'s conduct constitutes a misappropriation of Plaintiff's personal confidential information, an invasion of privacy, and a wrongful interference with Plaintiff's property rights.

157. A.R.'s actions were willful, malicious, and undertaken with reckless disregard for Plaintiff's rights.

158. As a direct and proximate result, Plaintiff suffered and continues to suffer damages and immediate irreparable harm.

159. Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

160. Plaintiff is entitled to the return of the Confidential Information and other relief that the court may deem just and proper.

161. Plaintiff is further entitled to injunctive and equitable relief, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets or use of his Confidential Information by any party; (ii) an order requiring A.R. to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R.

## COUNT EIGHT
### Civil Conspiracy
### (against Defendants A.R., Kelly, and John Doe #1)

162. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

163. At all relevant times, Defendants A.R., Kelly, and/or John Doe #1 knowingly and willfully agreed, combined, and conspired with one another to engage in unlawful conduct, including but not limited to, the unauthorized access of Plaintiff's iPhone, Crypto Wallets, and other assets, and the misappropriation and theft of the Stolen Assets and Plaintiff's Confidential Information.

164. Defendants had a meeting of the minds and acted in concert to accomplish these unlawful objectives, or to accomplish otherwise lawful acts by unlawful means.

165.    In furtherance of this conspiracy, one or more of the Defendants committed overt acts, including but not limited to, hacking into Plaintiff's iPhone, accessing his Crypto Wallets and exchange accounts, and transferring the Stolen Assets and Confidential Information without authorization.

166.    The unlawful acts committed in furtherance of this conspiracy constitute, among other things, fraud, conversion, misappropriation, and violations of Plaintiff's statutory and common law rights.

167.    As a direct and proximate result, Plaintiff suffered and continues to suffer damages and immediate irreparable harm.

168.    Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

169.    Plaintiff is entitled to the return of the Stolen Assets and other relief that the court may deem just and proper. Plaintiff is further entitled to injunctive and equitable relief, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets or use of his Confidential Information by any party; (ii) an order requiring A.R., Kelly, and John Doe #1. to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R, Kelly, and John Doe #1.

## COUNT NINE
### Negligence
### (against Defendant Kelly)

170.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

171.    Kelly owed a duty of care to Plaintiff, including a duty to supervise, control, and prevent foreseeable harm caused by the minor child, A.R., in his care.

172.    Kelly breached that duty by failing to exercise reasonable care, including but not limited to knowingly allowing, encouraging, or failing to prevent A.R. from laundering, washing, and transferring the Stolen Assets.

173.    As a direct and proximate result, Plaintiff suffered and continues to suffer damages and immediate irreparable harm.

174.    Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

175.    Plaintiff is entitled to the return of the Stolen Assets and other relief that the court may deem just and proper.

176.    Plaintiff is further entitled to injunctive and equitable relief, including but not limited to (i) an order enjoining the further transfer or disposition of Plaintiff's Stolen Assets by any party; (ii) an order requiring A.R. and Kelly to disgorge all ill-gotten gains; (iii) an order for an accounting of the amount and location of Plaintiff's Stolen Assets; (iv) an order imposing a constructive trust; and (v) an order freezing the assets of A.R. and Kelly.

## COUNT TEN
**Equitable Relief Against A.R., John Doe #1, Kelly, and the Relief Defendants: (i) Enjoining Current and Future Holders of The Stolen Assets from Transferring Or Disposing of The Stolen Assets; (ii) Enjoining Current and Future Holders of The Stolen Assets To Disgorge the Stolen Assets; (iii) Establishing a Constructive Trust Over the Stolen Assets; and (iv) An Accounting of the Stolen Assets.**

177.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

178.    Plaintiff and his expert have traced the Stolen Assets to certain wallets whose owners are unknown and to certain identifiable VASPs.

179.    The assets stolen by A.R., Kelly, and John Doe #1 are specific and identifiable property and can be traced to A.R., Kelly, and John Doe #1.

180.    In order to further prevent any further washing, laundering, or transferring of the Stolen Assets, Plaintiff requests an order enjoining the transfer or moving of those assets, including an order enjoining present and future holders of the Stolen Assets.

181.    The Stolen Assets being held by A.R., Kelly, John Doe #1, and the Relief Defendants must be disgorged to Plaintiff because Defendants are not entitled to the benefits of the Stolen Assets.

182.    The Stolen Assets must be held in trust for Plaintiff because Defendants are not entitled to the benefits of the Stolen Assets.

183.    A.R., Kelly, and John Doe #1 have attempted to dissipate the Stolen Assets with the goal of making the Stolen Assets difficult to track and/or recover.

184.    Plaintiff requests an accounting as to the location of the Stolen Assets.

185.    Plaintiff requests the imposition of a constructive trust upon the property that was stolen from him by A.R., Kelly, and John Doe #1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor and against Defendants A.R., Kelly, and John Doe #1 as follows:

a.    An injunction ordering A.R., Kelly, and John Doe #1 and the Relief Defendants to freeze and disgorge the Stolen Assets;

b.    An injunction preventing any unknown holders of the Stolen Assets from transferring or otherwise disposing of the Stolen Assets;

c.    An injunction ordering any unknown holders of the Stolen Assets to disgorge the Stolen Assets;

d.    An injunction enjoining A.R. from any further possession or use of A.R.'s Confidential Information;

e.    An order awarding Plaintiff actual, compensatory and consequential damages;

f.      An order awarding Plaintiff punitive damages in an amount to be determined but no less than $1.5 million;

g.      An order awarding Plaintiff pre- and post- judgment interest;

h.      An order awarding Plaintiff attorney's fees, expert and consultant fees and expenses, and costs; and

i.      Such other and further legal and equitable relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Dated: August 26, 2025                    Respectfully submitted,

                                          */s/ John G. Papianou*
                                          John G. Papianou (ID 269592019)
                                          Edward J. Heffernan (pro hac vice
                                          forthcoming)
                                          MONTGOMERY MCCRACKEN
                                          WALKER & RHOADS LLP
                                          1735 Market Street
                                          Philadelphia, PA 19103
                                          (215)-772-7401
                                          jpapianou@mmwr.com
                                          eheffernan@mmwr.com

                                          *Counsel for Plaintiff John Bellis*

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I, John G. Papianou, Esq., counsel for Plaintiff John Bellis, hereby certify that the matter

in controversy set forth above is not currently the subject of any pending action in court, any

pending arbitration, or any administrative proceeding.

Respectfully submitted,

*/s/ John G. Papianou*
John G. Papianou, Esquire

## **VERIFICATION**

I, John Bellis, am the Plaintiff in the above-captioned matter. I have read the foregoing Complaint and hereby verify that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment under penalty of perjury.

Executed on this 26 day of August , 2025.

John Bellis